F. M. YOUNG v. J. H. ROTHROCK, Judge of the Superior Court of the City of Cedar Rapids, Defendant, AND F. M. YOUNG, Appellant, v. CHADIMA BROS., Appellees.

**Contempt:** VIOLATION OF INJUNCTION: JUSTIFICATION. The violation of a restraining order cannot be justified in a contempt proceeding by showing that at the time the order was violated a motion to modify the same was pending.

**Same.** Where an injunction directs the removal from a street of an ice chute, a change in its construction and subsequent continued use is a violation of the order.

**Modification of Order:** MITIGATION. The verbal construction of an injunction order by the court issuing it is not a modification or dissolution of the same but may be considered in mitigation, as may also the good faith of the party in contempt.

**Nuisance:** ICE CHUTE: AUTHORITY OF CITY. An ice chute so constructed across a street as to obstruct the travel is a nuisance and a city has no legislative authority to grant its construction and use, nor is it justifiable on the ground of necessity.

**Nuisance:** WHO MAY ABATE. Where it appears that plaintiff has a peculiar interest in a street distinct from the general public he may maintain an action to abate a nuisance therein.

THURSDAY, OCTOBER 29, 1903.

ORIGINAL *certiorari* proceedings in this court to review the action of Hon. J. H. Rothrock, Judge, in discharging one J. T. Chadima from a charge of contempt in violating a writ of injunction issued against him; and also an appeal from an order dissolving a temporary writ of injunction issued in the second case above entitled, of "Young, appellant vs. Chadima Bros."—*Reversed.*

*W. E. Steele* and *John A. Reed* for plaintiff and appellant Young.

*Redmond & Stewart* for defendant Rothrock and for appellees Chadima Bros.

DEEMER J.—On the 23d day of December, 1901, there
was issued out of the district court of Linn county, Iowa,.
in an action wherein F. M. Young was plaintiff and J. T.
Chadima was defendant, a writ of injunction restraining
the said Chadima from maintaining, using, or operating
an obstruction in First Street West, in the city of Cedar
Rapids, more particularly described as an ice chute or
tramway, which ran across the street. December 28th of
the same year a motion to dissolve the injunction was
heard, and it was ordered that the motion be overruled,.
and that the temporary writ be made perpetual. It was
further ordered that defendant be allowed to use the ice
chutes until Monday, December 30, 1901, at twelve o'clock
noon of said day, and that such use should not be a violation
of said writ; and it was further ordered that at said time,.
to wit, December 30, 1901, twelve noon, the defendant
should remove said obstruction from said street and side-
walk. On January 12, 1902, plaintiff filed an application
charging Chadima with violation of the order. An at-
tachment issued, which was duly served, and thereupon
Chadima appeared, and filed a written excuse for his al-
leged violation of the writ, in which he stated, in sub-
stance, that he had made application to the district court-
of Linn county for a modification of the injunctional
order, and asked that the proceedings for contempt be sus-
pended. He also pleaded that he be permitted to proceed
with the operation of his ice chute until his motion could
be heard. He further pleaded that the proceedings for
violation of the injunction were without jurisdiction; that
he acted in good faith in operating the chute, under the
authority and permission of the city council of the city of
Cedar Rapids, and with the least possible obstruction to
travel. On January 14, 1903, plaintiff commenced the
second action above entitled for an injunction against
Chadima Bros., restraining them from operating an ice

chute across the aforesaid First street. A temporary writ
of injunction was issued on this petition as prayed, and
thereafter the defendants filed an answer to the petition,
denying the alleged nuisance, pleading municipal author-
ity, and other matters to which we shall hereafter refer;
and thereafter a motion to dissolve the temporary writ of
injunction issued in the second case as above entitled.
The contempt proceedings and the motion to dissolve in
the second case seem to have been tried together, result-
ing in the discharge of J. T. Chadima and the sustaining
of the motion to dissolve. The original *certiorari* proceed-
ing is to review the action of the defendant judge in mak-
ing the order for discharge, and the appeal in the second
case is from the ruling dissolving the temporary writ of
injunction issued in that proceeding.

There is no doubt that J. T. Chadima violated the terms
of the original writ of injunction issued by the district court
of Linn county, and that he should have been punished

1. VIOLATION
of injunc-
tion: justifi-
cation.

therefor, unless it be for some matter of ex-
cuse presented by him. He says that at the
time he violated the writ he had filed a motion
to modify the terms of the original order. But this is
manifestly no excuse. If it were, then all that one need
do who has been enjoined from the performance of a par-
ticular act is to file a motion to modify the order, and
from that hour he may proceed with impunity to violate
the terms of the writ. The statement of the proposition
is all that is necessary to demonstrate its unsoundness.

Next, he contends that he complied with the injunc-
tional order by changing the method of the constructon of
the chutes; not that he removed them, but that he so

2. SAME,

altered their construction as that they did
not interfere with public travel on the street.
This view overlooks the form of the injunctional order,
which restrained defendant from using or operating an ice
chute in the street after December 30, 1901, and further

·directed that the same should be removed from the street
and sidewalk. A mere change in the construction of the
·chute did not amount to a removal, nor did it authorize
·Chadima to operate it in its changed condition. He was
restrained from using or operating the same on the street.
The change made in the construction did not entirely ob-
viate the dangers to be apprehended from its use, and
there is no doubt that its use, under the circumtsances
·disclosed in evidence, was in violation of the terms of the
injunction.

Lastly, it is insisted that the district judge who
·ordered the original writ gave Chadima verbal permission
to make use of the street in the manner he did. All that
is claimed in this connection is that the judge
said that the use made of the street, if with
the permission of the city council, would not
be contrary to the terms of the writ. No claim is made
that Judge Thompson ever in fact made an order modify-
ing his direction and order for the writ, or that he was
·even asked to do so, before Chadima proceeded with the
·use of the ice chute. He was simply asked for a construc-
tion of an order which had passed beyond his control, and,
·as we understand it, said that, if the city council gave
·Chadima permission to use an ice chute across the street,
it would not be a violation of the terms of the injunction.
Manifestly, this would not be a legal excuse for the viola-
tion of the injunction. Such fact might, no doubt, be
·considered in mitigation, but it did not amount to a dis-
·solution or modification of the injunction, and until there
was some such order it was the duty of Chadima to obey
the commands of the writ. This is fundamental. *Lan-
worthy v. McKelvey*, 25 Iowa, 55; *Lake v. Wolfe*, 108 Iowa,
187. Chadima's good faith is no excuse, but no doubt
may be considered in fixing the penalty to be imposed for
violation of the writ. *Hawkins v. State*, 126 Ind. 294 (26
N. E. Rep. 43); *Cartwright's Case*, 114 Mass. 230; *Des*

3. MODIFICA-
TION of
order: miti-
gation.

*Moines Co. v. Des Moines Co.*, 74 Iowa, 585. The order discharging J. T. Chadima was clearly erroneous, and the proceedings resulting in his discharge will be annulled, and the trial court is directed to proceed as if no such order had been made. J. T. Chadima will pay one-half of the costs of this proceeding.

II. As to the second case two questions arise: First, was defendant maintaining a nuisance on the street by the construction and operation of its ice chute? and, second, is plaintiff entitled to have the same enjoined? Defendants have an icehouse on one side of First street, and the river from which they procure their ice is on the other. To get the ice from the river into the icehouse, they constructed a chute which ran from the river to the street line up a steep incline, from the street line across the street on a level, and from the icehouse side of the street to the icehouse on an incline which varied in steepness as the icehouse was filled. As it crossed the street and sidewalk, the bottom of the chute was sunk so that the tops of the sides, which were about two inches deep, were practically on a level with the street and sidewalk. When the time came for filling the icehouse, pulleys and other apparatus were used for taking the cakes of ice from the river, where they were cut, up this chute to the house. Horses furnished the motive power, and the work was quite rapidly done. Ice was taken up as fast as possible. Indeed, one of the witnesses says that eleven loads were hauled every five minutes, and that each load averaged four cakes each forty-four inches long. The ice cakes extended above the street level something like ten inches, depending, of course, on the thickness of the cakes. It needs no argument to demonstrate that this constituted an obstruction of the street. But, aside from this, the manner of doing the work was a constant menace to persons passing by. The danger from ice which would naturally fall upon the

4. NUISANCE: ice chute: authority of city.

street from the chute and into the chute, and from the cakes themselves which were likely to break loose from the jacks and rush down onto the sidewalk and into the street, rendered the plant a public nuisance. No citation of authorities is needed to support so plain a proposition. But it is said that, as the city authorities gave defendants permission to construct and use the chute in the manner shown, they were guilty of no actionable wrong.

Specific legislative authority to do an act will generally save the perpetrator from the charge of nuisance, although there are some exceptions to this rule, founded on constitutional guaranties, which need not at this time be noticed. But, when legislative authority is relied upon, it must be broad enough to cover the very act complained of. If there be two methods of doing the authorized act, one of which will accomplish the result without creating a nuisance, and another which may injure persons or property, the former method must be pursued, and not the latter. It is not contended that the city was expressly authorized to permit the construction of ice chutes in the streets. Such power, if it exists at all, arises by implication. Defendants contend that it is found in one or the other of these powers vested in the city, to wit, care, supervision, and control of streets; to make ordinances for the good government and order of the city and the trade and commerce thereof; vesting the fee of the streets in the city; to abate and remove nuisances, and to declare and define what shall be deemed nuisances; or to establish, construct and regulate landing places, wharves, etc., and to use for such purposes the shore and bank of any river—found in the general statutes of the state and in the charter of the city. It is manifest, we think, that no power is here conferred for the establishment of such a nuisance as we have described. Indeed, one of the statutes from which the defendants quote provides that the

city shall cause all streets to be kept open and free from nuisances. Code, section 753. While streets and alleys may be devoted to other purposes than public travel, that is the paramount object in maintaining and establishing them, and all other uses must be subordinated thereto. As said in *Town of Spencer v. Andrew*, 82 Iowa, 16, "the city or town must keep them free from obstruction, except where the use or obstruction is such as the city or town is specifically empowered to and has authorized." There are some exceptions to this rule, which are born of necessity, as most exceptions are. Thus an abutting owner may temporarily encroach upon the street by the deposit of building material, may temporarily obstruct the street by loading and unloading goods into his building or upon his property, may plant trees in the parking which do not interfere with public travel, or temporarily interfere with public travel in a variety of ways, without being guilty of nuisance. *Callanan v. Gilman*, 107 N. Y. 360 (14 N. E. Rep. 264, 1 Am. St. Rep. 831); *Sikes v. Manchester*, 59 Iowa, 65; *Haight v. Keokuk*, 4 Iowa, 199. But he cannot cut a ditch or a mill race across it without restoring the way to its former safe and convenient condition. *Dygert v. Schenck*, 23 Wend. 446 (35 Am. Dec. 575); *Venard v. Cross*, 8 Kan. 248; *Village of West Bend v. Mann*, 59 Wis. 69 (17 N. W. Rep. 972). The construction of a permanent ice chute across a street is manifestly a nuisance. Such an act is not authorized by the legislature, nor can it be said to be justifiable on the ground of necessity. It is admitted that there are other methods of getting ice across the street, but it is said that they are expensive, and for that reason this method should not be condemned. There is no merit in this claim.

The only other point involved is the right of plaintiff to enjoin the nuisance. It is said that he has no other interest than that of the general public, and that for that reason he cannot maintain the action. It is admitted, of

course, that plaintiff must show he suffers some special **5. NUISANCE who may abate.** damage distinct from that of the general public. The fact, however, that others sustain like damages is not controlling. The test is, does plaintiff suffer damage distinct from that of the general public? *Park v. R. R. Co.,* 43 Iowa, 636.    If, then, plaintiff has shown that the street which was obstructed led directly to his premises, and that the obstruction interfered with his access thereto, this is a sufficient showing of special damages to authorize him to maintain the suit.    There is no difficulty with the rule, although its application is not always easy.    Plaintiff has shown that, if deprived of the use of First street, he is compelled to go several blocks out of his way to reach the premises owned by him, which abut on the street, and are in the same block as defendants' icehouse, and that First street gives him the only reasonable access to his property.    This is a sufficient basis for his action.    *Hill v. Hoffman,* (Tenn. Ch. App.) 58 S. W. Rep. 929;    *Callanan v. Gilman, supra; Dairy v. R. R. Co.,* 113 Iowa, 719.

We think the lower court was in error in dissolving the temporary writ of injunction, and its ruling is therefore REVERSED.