[No. 23892. Department One. August 10, 1932.]

THE STATE OF WASHINGTON, *on the Relation of Theodor Suksdorf, Plaintiff,* v. THE SUPERIOR COURT FOR KLICKITAT COUNTY, *Respondent.*[1]

*McMaster, Hall & Schaefer,* for relator.
*F. A. Smith* and *McEwen & Brooks,* for respondent.

PARKER, J.—The relator, Suksdorf, seeks, in this court, review and reversal of a decree of public use and necessity rendered by the superior court for Klickitat county, adjudicating the right of that county to acquire, by eminent domain proceedings therein, a right of way over land owned by him within the corporate limits of the town of Bingen, in that county,

[1]Reported in 13 P. (2d) 460.

for the improvement of a lateral highway established partially therein, in pursuance of chapter 88, Laws of 1929, p. 159.

In the fall of 1929, there was duly established by the county commissioners of Klickitat county the lateral highway here in question. It begins in the town of Bingen, a duly incorporated town of the fourth class, and extends northerly to the town of White Salmon. In Bingen, it connects with State Highway No. 8, which leads to Goldendale, the county seat of that county. Within the corporate limits of Bingen, it is established across land owned by relator for a distance of about four hundred fifty feet. The county, by the eminent domain proceedings in the superior court, sought, and was awarded, the decree of public use and necessity adjudicating its right to so acquire such right of way. The only contention here made in behalf of relator is that the county does not possess the right of eminent domain to acquire such right of way within the limits of the town of Bingen.

Chapter 88, Laws of 1929, p. 159, pursuant to which the county commissioners established the highway, provides, in so far as need be noticed in our present inquiry, as follows:

"Section 1. On or before the first day of August, 1929, the county commissioners of each county in this state shall make a survey of the highway situation in their respective counties, and shall prepare a master plan for the construction and/or improvement of the county roads of their respective counties. In preparing such master plan the board shall make a special study of the needs of its county for roads leading to and connecting directly or indirectly with state highways, . . . roads connecting trade centers and connecting with each other and with the county seat, . . . The board shall in its plan classify certain streets, roads and highways in its county both inside

aud outside of the corporate limits of cities and towns within the following classes:

"(a) State highways, which shall include only such highways as shall have been established as state highways by legislative enactment, and

"(b) Lateral highways, which shall include such other streets and roads within the county not classified as state highways, but which lead to and connect directly or indirectly with state highways, and which can be constructed and/or improved to the standard hereinafter provided for lateral highways with the revenues which will be provided by and available for expenditure under the provisions of this act within a period of ten years from the first day of August, 1929. The plan proposed by the board shall be sketched upon a map which shall be on a scale of at least one inch to the mile, and which shall have designated upon it all the roads in the county in accordance with the classification herein required upon such map in colors appropriate as to make them readily distinguishable;

. . .

"Sec. 2. . . . After said master plan and map shall have been finally adopted by the board, a copy of the same shall be furnished to the state highway engineer and shall be kept on file in the office of the state highway engineer; . . .

"Sec. 12. Whenever the board of county commissioners shall find it necessary for the purpose of constructing and/or improving any highway, straightening it or lessening the gradients thereof, or otherwise improving the same, to acquire or appropriate lands, real estate or other property, such board is hereby authorized to acquire the same by condemnation proceedings in the manner provided by law for the appropriation of lands, real estate or other property by private corporations authorized to exercise the right of eminent domain."

That act further provides for a fund to be raised by a gasoline tax to be collected by the state and apportioned to the several counties, which fund is to be expended by the counties in pursuance of plans of im-

provement of such highways approved by the state highway engineer. Such fund is now available to Klickitat county in its proper proportion, applicable to the acquiring of the right of way for and the improvement of this established lateral highway.

In support of the contention that the county does not possess the power of eminent domain to acquire a right of way for the highway within the corporate limits of the town of Bingen, there is invoked the general statutory power of towns of the fourth class "to establish, lay out, alter, widen, extend, keep open, improve and repair streets, . . ." (Rem. Comp. Stat., § 9175); and also the general statutory power of county commissioners

" . . . to lay out, discontinue or alter county roads and highways within their respective counties, and do all other necessary acts relating thereto according to law, except within the limits of incorporated cities and towns, whereby the terms of the acts of incorporation, jurisdiction over the roads in the limits of said incorporations is vested in the corporate authorities thereof;" (Rem. Comp. Stat., § 4056).

These general statutory provisions touching the powers of towns of the fourth class and county commissioners have been in existence since long prior to the enactment of chapter 88, Laws of 1929, p. 159, under which this lateral highway was established. This is not only the latest legislative expression touching the powers of towns of the fourth class and of county commissioners, but is an express, special statutory power given to county commissioners to effectuate the purpose of that act. It, in plain terms, gives to the county commissioners the power to classify streets, roads and highways in their respective counties, "both inside and outside of the corporate limits of cities and towns," which means, we think, in the light of the

other provisions of the chapter, not only to so establish lateral highways, but to acquire by eminent domain proceedings rights of way therefor and to improve them.

We have not overlooked the fact that § 12 uses very general language as to the exercise of the right of eminent domain; but, manifestly, the language of that section means that the county shall have the power of eminent domain to acquire rights of way for and to improve the roads its commissioners properly classify and establish within, as well as without, the corporate limits of the cities and towns, except as to first class cities, which is an exception specified in the act and with which we are not here concerned.

Our problem, we think, is nothing more or less than one of construction of the meaning of this statute. It is not argued—indeed, we think there is no room for seriously arguing—that the legislature does not have the power to confer upon county commissioners this authority over the acquisition of property for and the improvement of streets and highways within city and town corporate limits. In the text of 13 R. C. L. 163, we read:

"Subject to constitutional limitations, the state has absolute control of its public streets and highways, including those of its municipal and quasi-municipal corporations."

This text is supported by numerous, authoritative decisions.

It is argued that such a construction of this act will lead to possible conflict between town and county authorities over streets and highways within the corporate limits of cities and towns, and that therefore the act should not be so construed. That, to our mind, is an argument to be addressed to the legislature rather than to the courts. A similar argument was addressed

to the supreme court of Ohio in *Lewis v. Laylin,* 46 Ohio St. 663, 23 N. E. 288, and was answered by the court in this terse manner:

"That there is some danger of a conflict of authority between the county commissioners and the municipal council, where both have power to improve the same highway, can not be denied. That is a danger that always exists where two independent officers or bodies have a concurrent authority over the same subject; yet, in many instances, there are other considerations that override this objection, and the concurrent authority is given. This is a question of public policy, to be considered and determined by the legislature alone."

Some further argument is made in behalf of relator rested upon the fact that the town of Bingen was not made a party to the eminent domain proceeding. We think the answer to this contention is that the town has no property right whatever at stake in the condemnation proceeding. 19 R. C. L. 761. As to its governmental right, that was for the legislature to decide. There is no suggestion in the act that any city or town shall be made a party to the eminent domain proceedings looking to the acquiring of rights of way within its boundaries for such an established highway, except, of course, as to land owned in a proprietary capacity by such city or town. Our decision in *State ex rel. Floyd v. Superior Court,* 86 Wash. 410, 150 Pac. 618, is not out of harmony with the views we here express. Indeed, observations made in that decision lend support to our conclusions.

We conclude that the decree of the superior court must be affirmed. It is so ordered.

HOLCOMB, MITCHELL, and STEINERT, JJ., concur.

TOLMAN, C. J. (dissenting)—While without doubt the legislature might have granted to the county com-

missioners the right here sought to be exercised, yet I can find no language in the act which to my mind will bear any such construction. In the light of the earlier statute giving every municipal corporation full control of the roads and streets within its territorial limits, and having in mind the rule that repeals by implication are not favored, a clear expression of its intent to make so vital a change should be held necessary. I therefore dissent.