## TURNER *v.* STATE ROADS COMMISSION

[No. 211, October Term, 1956.]

(Two Appeals In One Record.)

*Decided June 3, 1957.*

The cause was argued before COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ., and McLAUGHLIN, J., Associate Judge of the Fourth Judicial Circuit, specially assigned.

*David A. McNamee,* with whom were. *W. Carroll Beatty* and *Beatty & McNamee* on the brief, for appellants.

*Walter W. Claggett, Special Assistant Attorney General,* and *Ralph W. Powers, Special Attorney,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Joseph D. Buscher, Special Assistant Attorney General for the State Roads Commission,* on the brief, for appellee.

McLAUGHLIN, J., by special assignment, delivered the opinion of the Court.

This case is a combined appeal from two judgments of the Circuit Court for Prince George's County, entered on inquisitions of a jury in two condemnation cases which were tried together by stipulation. The owners of the two properties involved, Albert H. Turner and wife, and Albert W. Turner and wife, have appealed from these judgments. Albert H. Turner is the father of Albert W. Turner. The portions of the 'two properties condemned are located on the opposite sides of Enterprise Road in Prince George's County.

The State Roads Commission desires to reconstruct Enterprise Road and provide for a future interchange to be built at this road to serve U. S. Route 50. The father's property fronts 336 feet on the east side of Enterprise Road. The roadside strip taking from the father will consist of 3.48 acres. The Commission plans call for a dual highway on Enterprise Road with two lanes divided in the center by a 16 foot median strip at the area of the interchange. Such plans will require the father, in order to go south from his property, to take a service road for about 200 feet before getting access to Enterprise Road.

The Commission proposes a total condemnation of the son's property on the west side of Enterprise Road of 11.543 acres. The median strip problem is also involved in this taking. To go south the son will have to proceed north 400 to 500 feet to the nearest break in the median strip and then "U" turn

south. The taking is in two sections, one for the Washington-Annapolis Expressway (U. S. Route 50) and the other for a strip along Enterprise Road. The son will have denial of access to the new freeway and to Enterprise Road to a point some 75 feet north of his present driveway.

The appellants have posed to us three questions as a basis of their appeal which we will answer as presented.

I.

*Did the lower court commit reversible error by refusing to permit the witness Coates to give a valuation of appellants' property?*

To prove the amount of damages to their respective properties, appellants called Walter Addison, whose qualifications as an expert were not challenged, Lloyd R. Coates, who was not permitted to give valuation figures, and both father and son testified as property owners.

The witness Coates, a resident of Prince George's County all his life, had over 20 years experience in the real estate business. He is vice president of a realty firm and holds the same position with a building firm which builds over 300 houses a year. Coates is also a director of the Prince George's County Real Estate Board. He is a licensed broker in Maryland, the District of Columbia and Virginia.

After a presentation of the above the witness Coates stated he was familiar with properties and values in the vicinity of Enterprise Road and the new Annapolis Freeway. The witness then described a sale he had made to a company known as the District Corporation in April, 1953, of 81 acres located on Palmer Highway about a mile and a half from Enterprise Road. The appellee objected to the sale as being incomparable but the court held that it was comparable. This property brought approximately $1,500 per acre. The witness next being asked about other comparable property stated he had made many sales in the area of Palmer Highway. These sales had been made before and after the taking which was agreed to as being January, 1955. Mr. Coates gave no figures for these properties, but cited familiarity with a Peffer

property sale. This property had been referred to by Mr. Addison in his testimony and was located 500 to 600 feet south of the father's house on Enterprise Road. This property of 16 acres with no improvements brought $12,500. Thereafter the witness gave a generalization of his knowledge of properties on Enterprise Road and his familiarity with the Turner's properties. He was then asked to give an opinion of the fair value of the Turners' land immediately prior to the taking. The appellee objected and the court sustained. For its reasons the court stated that only one property (Peffer) sale was comparable although the court had originally held the 81 acre tract sold to the District Corporation to be a comparable sale. The remaining testimony of Mr. Coates dwelt with a sale of property across the road from Mr. Turner, Sr., purchased in 1953, by Frank Halley. This land sold for $1,000 to $1,500 an acre. Also he referred to a property to the north of the son's that brought $1,000 an acre in 1953. The appellee's counsel again objected because no names or dates had been specified. Counsel for appellants stated dates had been given. All this jousting as to the qualifications of the witness was concluded by this statement of the court: "Mr. Beatty, you know very well that we cannot deal in generalities in permitting a witness to qualify. If he can show that he knows of his own knowledge of the details involved in the sale then I say that he might be qualified, but just to speak in generalities is not proper. He heard of a sale here and heard of a sale there." The witness was then excused.

Appellee insists that the court did not decide the witness could not qualify and the appellants should have proceeded further to qualify the witness. We do not agree. Counsel had drawn from the witness all information he had of comparable sales and the court reiterated his original opinion that Coates was not qualified. The excusal of the witness at this juncture cannot be considered as an abandonment to qualify him.

The question of whether a witness is qualified to give an opinion must be left in a large measure to the sound discretion of the trial court. 32 *C. J. S., Evidence,* § 458 (b): Dis-

cretion of Court, states: "Whether or not the qualification of a witness to state his opinion is sufficiently established is a matter resting largely in the discretion of the trial court, and its ruling thereon, * * * ordinarily will not be disturbed on appeal unless there is a clear showing of abuse. If the witness has some qualifications, he should be permitted to testify."

The case of *Baltimore v. Brick Co.*, 80 Md. 458, 472, was the first case in Maryland to enunciate the law that prices realized for sales of similar land in the vicinity of that to be condemned were admissible before a jury trying to ascertain its value. The Court in this case said: "It is generally conceded that the opinions of witnesses having sufficient knowledge on the subject and acquainted with the land in question, are admissible to prove such value; and that the question as to whether a witness is qualified to give an opinion must be left, in a large measure, to the discretion and judgment of the trial Court, but of course that discretion is not without limit. * * * We think, therefore, that the prices realized at sales of the land in question and of similar land in its vicinity, made within a reasonable period of time theretofore, * * * are admissible in evidence * * *." Since this holding it has long been the custom that before real estate experts can give opinions of land values such witnesses must qualify by showing they have knowledge of comparable sales; that is, they should know what similar land was selling for in the neighborhood before or at the time it was condemned. Knowledge of comparable sales is not the only test of the qualifications of a real estate expert, but is certainly a helpful one in determining competency.

Many Maryland cases have repeated the basic rule taken from 2 *Jones on Evidence* (4th ed.), Sec. 369, namely, "The question as to the competency or qualification of a witness who is tendered as an expert is to be determined preliminarily by the court; nor will the court's decision be reversed on appeal unless it is shown to have been based upon error of law or to have been the result of an abuse of judicial discretion." Most of the cases were appeals from the courts' admission of expert testimony rather than its denial, which indicates that

the trial courts have been more liberal than restrained in ruling witnesses competent.

The following are some of the Maryland cases holding expert testimony properly admitted: *Balt., Ches. & Atl. Ry. Co. v. Moon,* 118 Md. 380; *Susq. Trans. Co. v. Murphy,* 131 Md. 340; *Wingert v. Bowie,* 147 Md. 610; *Produce Exchange v. Express Co.,* 147 Md. 424; *Automobile Owners' Ass'n v. State,* 154 Md. 204; *Insurance Company v. Thrall,* 181 Md. 19.

Cases where it was held expert testimony was properly rejected are: *Ottenberg v. Ryan & Riley Co.,* 130 Md. 38, where the Court held the particular question was not material to the issue and not reversible error; *Battisto v. Perkins,* 210 Md. 542, where the Court held the question involved an engineering problem and was out of the field of real estate experts. In the case of *Preske v. Carroll,* 178 Md. 543, 552, the Court stated: "It is well established that any real estate dealer, or assessor, or any other person who has been engaged in business of such a character as to give him special knowledge of the subject, is competent to testify in reference to the value of land, if he has had an opportunity to form a correct opinion as to its value." This case held the exclusion of testimony of two real estate dealers was not reversible error. The case involved other questions and testimony of value was given by other witnesses. The ruling in effect was that a mistake had been committed in excluding the testimony, but not reversible error.

This Court has long held that while the admissibility of expert or opinion evidence is largely within the discretion of the trial court, it is always subject to the review of the appellate court. *Dashiell v. Griffith,* 84 Md. 363, 378, states: "We have, therefore, not hesitated to express our views upon the admissibility of such evidence, believing it to be properly reviewable by this Court." Approved in *Refrigerating Co. v. Kreiner,* 109 Md. 361.

We have concluded after a careful examination of the evidence that the trial court should not have excluded the opinion evidence of Mr. Coates. The trial court undoubtedly had in mind the holding of *Mayor & C. C. of Balto. v. Park Corp.,*

126 Md. 358, 367, where the Court decided that it was reversible error to admit expert testimony as to value based on one single, isolated transaction, and based his decision on this ruling. But it is impossible for us to fit this case into the facts at hand. Coates testified not only to a sale to the District Corporation, which the court found comparable, but also stated he was personally familiar with the sale of a Peffer property which was located 500 to 600 feet south of the Turners' properties. He also gave figures for a sale to a Mr. Halley in 1953, and referred to another property north of the Turners that brought $1,000 an acre in 1953. The evidence therefore shows not one sale, but at least four sales with the year of sale and sale price per acre. It is true that the jury had before it the testimony of the landowners and Walter Addison. But the jury may not have given as much weight to the testimony of interested property owners as it would have given that of an expert. Addison was not allowed to give any values except as to land as he was not familiar with building values. The Turner, Sr., taking involved possible damages to his home as the new road brought him 82 feet closer than he was before. The proper basis of damages in this case was of course the difference in fair market value before and after the taking. The jury therefore did not have the benefit in the Turner, Sr., case of any valuation damage except that of the owner and land taking value given by Addison. We feel that both property owners were possibly harmed by being denied the right to present Mr. Coates' testimony to the jury and that the exclusion of this evidence constitutes reversible error.

## II.

*Did the trial judge commit error by denying damages to appellants for the impairment of access caused by the median strip?*

Appellants insist the court should not have instructed the jury that with respect to the median strip and control of the flow of traffic on the highway "damage is not compensable to the owners of the land and is to be disregarded by you * * *."

It is not denied that construction of a median strip will result in inconvenience to the property owners and others entering or leaving the properties in question. The extent of this impairment as to both Turners is set forth in the facts outlined hereinbefore.

On the same day this case was argued here, the opinion of Chief Judge Brune was filed in the case of *Langley Shopping Center, Inc., et al. v. State Roads Comm.*, 213 Md. 230. The two complainants in the *Langley* case owned large shopping centers diagonally across from each other at the intersection of the four-lane highways of New Hampshire Avenue and University Lane in Prince George's County. The Commission proposed to construct median strips in the center of both highways, the openings of said strips to be located beyond complainants' shopping centers, and thus left hand turns could not be made directly into the shopping centers. Complainants alleged these median strips would cause them to lose one-half of their business from motorists who constituted 95% of complainants' customers.

This case presented the question of whether the Commission had the right to construct median strips so as to deprive direct access to properties without having to pay compensation. The Court distinguished the Maryland cases which had allowed compensation where practically all ingress and egress left the property inaccessible and held the case more analogous to *Krebs v. State Roads Comm.*, 160 Md. 584, where compensation was denied.

The *Langley* case was one of first impression in this State as to whether or not the installation of a median divider in a highway constitutes the taking of the property of an abutting landowner for which compensation must be paid. The question had been passed upon in California and Illinois, where compensation was denied. *Rose v. State of California,* 19 Cal. 2d 713, 123 P. 2d 505; *People v. Ricciardi,* 23 Cal. 2d 390, 144 P. 2d 799; *Holman v. State of California,* 97 Cal. App. 2d 237, 217 P. 2d 448; *City of Chicago v. Spoor,* 190 Ill. 340, 60 N. E. 540.

The Court in the *Langley* case found the alleged facts in the bill amounted only to a diversion of traffic and not a

blocking of complainants' means of access to the highways. We think the facts proven here should be given the same interpretation. True, it will be more inconvenient for appellants to reach the new highway in order to drive south, but there certainly is no blocking of access shown, nor is it so contended.

In the *Langley* case the Court said: "The facts alleged in the present bill are more nearly akin, we think, to a diversion of traffic than to a blocking of the plaintiffs' means of access to the highways. It seems to us entirely reasonable that if the State could divert traffic entirely away from the plaintiffs' corners without being liable for damages for doing so, it may, in the interest of safety, and without incurring liability for damages, interpose an obstacle which may render access to the plaintiffs' properties less easy but which does not actually or virtually destroy the plaintiffs' access to the highway. An opposite view would require the State to pay through the nose for the privilege of further improving and adding to the safety of highways which it has built and which have evidently brought customers to the doors of the owners of land fronting on such highways. * * *.

"On this phase of the case we conclude on the basis of our own decisions and authorities in other States that the construction of the median dividers does not constitute a taking of the plaintiffs' property within the constitutional meaning of the term and hence that the Commission is not bound to pay damages to the abutting landowners."

The *Langley* case is controlling here and the trial judge was correct in not allowing damages for the impairment of access to appellants' properties.

## III.

*Was there any error in the conduct of the trial concerning damages allowable for the perpetual right to erect and maintain snow fences on appellants' property?*

There is nothing in the record to properly present this

question to us. Appellants state in their brief that through confusion or error the transcript fails to recount the trial judge's exact instructions to the jury on the use of the inquisition forms, but that the jury was told by the trial judge to consider the perpetual right to erect snow fences (which appeared in the inquisition forms) as a part of the taking and as part of the damages to be awarded.

It is admitted that neither side presented any evidence of damages that might be caused by the erection of snow fences. The record shows that it was the appellee, not the appellants, who objected to the court's instruction to the jury about snow fences. If there was no evidence whatsoever in the case concerning potential damages on this score, then appellants possibly received an advantage to which they were not entitled and it is understandable why they voiced no objection. But the appellants cannot use an exception made by the appellee for the purpose of having the question decided here. Appellants cannot run with the fox and hunt with the hounds. There was no exception to the charge noted by appellants and therefore nothing for us to consider under the Rules.

*Judgments reversed, with costs to appellants, and cases remanded for a new trial.*