378 P.2d 595

**STATE of New Mexico ex rel. STATE HIGH-
WAY COMMISSION of New Mex-
ico, Plaintiff-Appellee,**

v.

**Paul A. SILVA and Gloria Q. Silva,
Defendants-Appellants.**

No. 6958.

Supreme Court of New Mexico.

Dec. 14, 1962.

Rehearing Denied Feb. 27, 1963.

Phillips, Dolan & Clear, Albuquerque, for appellants.

Earl E. Hartley, Atty. Gen., M. W. Hamilton, Hadley Kelsey, Epifanio Garcia, Joseph L. Droege, John C. Worden, J. O. Walton, Sp. Assts. Atty. Gen., Santa Fe, for appellee.

NOBLE, Justice.

The action was in declaratory judgment to determine whether defendants suffered a compensable damage to their property by reason of a highway improvement.

It should be noted that none of defendants' property was appropriated, nor was there any change of grade on the road in front of their property.

U. S. 85, south of Belen, New Mexico, on which defendants' property abutted, was the principal north-south highway over which all through traffic flowed. Interstate 25, a new, controlled-access highway, was constructed on a new location roughly parallel and to the west of U. S. 85. Where it passes defendants' property it is separated from the old road by a barrier. The two rights-of-way do join or overlap at some places and an "on grade" interchange was constructed some 350 feet south of defendants' land, giving access between U. S. 85 and the new highway. Simultaneously, U. S. 85 was reconstructed on its same location and grade from the interchange to a point some 800 feet north of defendants' property. At that point the two rights-of-way intersect and a barrier was constructed across U. S. 85 to prevent access at that point to the interstate highway. The barrier effectively closed U. S. 85 to further travel in a northerly direction. All of the traffic formerly flowing over U. S. 85 was diverted to the interstate highway. The case was tried to the court upon the facts and issues made by the pleadings. No evidence was adduced at the trial.

The trial court determined the property damage to be damnum absque injuria and non-compensable.

Defendants, as owners of real estate abutting on a highway, have a right of access—the right of ingress and egress to and from their property—which is a property right—a special interest of which they cannot be deprived without just compensation.

Article II, § 20, New Mexico Constitution provides: "Private property shall not be taken or damaged for public use without just compensation."

It seems to be conceded by both parties that defendants operated a bar. The real cause of the depreciation in value of their property by reason of the highway improvement is the diversion of traffic from U. S. 85 to the new interstate highway.

We are committed, in New Mexico, to the rule that a landowner, abutting on a public highway, enjoys no vested interest in the flow of public travel past his premises, and is not entitled to compensation for depreciation in his property value or loss of business resulting from diversion of traffic by the opening of a new highway. Board of County Commissioners v. Slaughter, 49 N.M. 141, 158 P.2d 859. But defendants assert that the closing of U. S. 85 north of their property deprives them of the right of travel to the general highway system in one direction and access to the general highway system except in one direction. They contend that the closing of U. S. 85 north of their property requires them, if they want to go north to Belen, to travel by a more circuitous and inconvenient route, and leaves them in a pocket or cul-de-sac.

Courts are agreed that only one whose damage, occasioned by highway improvement, is special and direct as distinguished from remote and consequential, and which differs in kind from that of the general public, suffers a compensable injury. Wine v. Commonwealth, 301 Mass. 451, 17 N.E.2d 545, 120 A.L.R. 889, was cited in Slaughter as an example of distinguishing special and direct from remote and consequential damages caused by highway improvement. In Wine v. Commonwealth, supra, it was said that the closing of a road beyond petitioner's premises as a result of the construction of an overpass and bridge, which diverted traffic with resultant damage to him, standing alone, was not a special injury, but one general to the public as a whole; but that the subsequent barricading of other streets which completely shut off his access to the general system of public highways in the city did constitute injury special and peculiar to him, different in kind from that suffered by the general public.

Defendants argue that the vacation of U. S. 85 north of their property distinguishes Board of County Commissioners v. Slaughter, supra, and that they are so

specially injured as to entitle them to compensation for the diminution in the value of their property.

Courts are not agreed as to the extent of private rights in public highways, some courts holding that if the street upon which one's property abuts is so closed that his property is left in a pocket or cul-de-sac so that his right of access to the main street system of the municipality is cut off from one direction, he suffers a special injury even though he has access thereto by a more circuitous and inconvenient route. Defendants predicate their claim to damages upon the theory of those decisions so holding and rely principally upon In re Vacation of Part of Melon Street (1897), 182 Pa. 397, 38 A. 482, 38 L.R.A. 275; Park City Yacht Club v. City of Bridgeport (1912), 85 Conn. 366, 82 A. 1035, 39 L.R.A.,N.S., 478; and, the note at 49 A.L.R. 351. In Bacich v. Board of Control of California, 23 Cal.2d 343, 144 P.2d 818, damage resulting from creation of a cul-de-sac was limited to those situations where the closing of the street at one end was between the abutting property and the next street intersection. The majority in that case limited application of the cul-de-sac rule to such situations inside municipal limits. The court said:

"* * * we are not concerned with the correct rule in a case where the obstruction occurs beyond the next intersecting street nor with what the rule may be for rural property. * *"

Other jurisdictions hold that no special injury is sustained by one whose property does not abut on the closed section, and he has no right to compensation by reason of the closing of a street, if there remains reasonable access to the main street system in the other direction. 49 A.L.R. 330 and the supplementing note in 93 A.L.R. 639; Freeman v. City of Centralia, 67 Wash. 142, 120 P. 886; Olsen v. Jacobs, 193 Wash. 506, 76 P.2d 607; Jackson v. Birmingham Foundry & Machine Co., 154 Ala. 464, 473, 45 So. 660.

In New York, Chicago & St. Louis Rd. Co. v. Bucsi, 128 Ohio St. 134, 190 N.E. 562, 93 A.L.R. 632, a part of Nevada Street was closed at a point 350 feet east of the Bucsi property, thereby rendering the street a cul-de-sac with entrance only from one street. Bucsis' access from their property to East 89th Street was completely destroyed. It was contended that they suffered a special damage which was compensable, but the court held, as set forth in the syllabus:

"Where a duly dedicated and accepted east and west street of a city is vacated by the city some distance from its eastern terminus and completely closed to travel, the owner of property abutting upon such street but not upon the vacated portion thereof

has no right of action for damages because of such vacation, so long as his access to the city street system to the west is not impaired; * * * and that under such circumstances, the abutting property owner's damage, if any, differs in degree but not in kind from that of the general public, and his legal status falls within the category of damnum absque injuria."

Other Ohio decisions to the same effect are, State ex rel. Merritt v. Linzell, 163 Ohio St. 97, 126 N.E.2d 53, and New Way Family Laundry, Inc. v. City of Toledo, 171 Ohio St. 242, 168 N.E.2d 885.

The question was considered in Arcadia Realty Co. v. City of St. Louis, 326 Mo. 273, 30 S.W.2d 995, where the Supreme Court of Missouri said:

"But if it be assumed that plaintiffs' properties will be stripped of potential uses and their value thereby lessened, and that the streets on which such properties are located will become cul de sacs as plaintiffs claim (although Johnson street, Fifteenth street, and the alley in block 219 will be connected at their south ends by an east and west traffic way), all as a result of the street vacations in question, still plaintiffs will not by reason thereof suffer injury special or peculiar to them within the meaning of the rule long established in this state."

See, also, Wilson v. Kansas City (Mo.). 162 S.W.2d 802; Handlan-Buck Co. v. State Highway Commission (Mo.), 315 S.W.2d 219; Department of Highways v. Jackson, 302 S.W.2d 373 (Ky.); Thomas v. Jultak, 68 Wyo. 198, 231 P.2d 974; and Warren v. Iowa State Highway Commission, 250 Iowa 473, 93 N.W.2d 60, where the Iowa decisions are collected and discussed. Compare Grand River Dam Authority v. Misenhimer, 195 Okl. 682, 161 P.2d 757, where compensation was awarded for the closing of roads in both directions leaving only a dirt road as access to the main highway system which was said to be practically impassible at times.

■ The growing use of automotive transportation naturally led to many problems connected with the health and general safety of the traveling public and to the necessity for restrictions and regulations concerning the use of public highways. With the construction of modern, high-speed, through interstate highways came the necessity for controlled access to and from such highways in the interest of the safety of the public generally. It is well settled that limitation or regulation of highway traffic comes under the police power. State ex rel. Suksdorf v. Superior Court, 169 Wash. 195, 13 P.2d 460. Its exercise affects the safety of all persons traveling upon the roads of this state. Likewise, it cannot be doubted that the state, in the exercise of its police power,

in the interest of the safety of the traveling public, has the right to limit or control access to certain highways. The barricade across U. S. 85, in this instance, was to prevent access from U. S. 85 to Interstate 25 at that point. The regulation of traffic without liability for payment of compensation has included prohibiting left turns except at designated places and one-way streets. Jones Beach Boulevard Estate, Inc. v. Moses, 268 N.Y. 362, 197 N.E. 313, 100 A.L.R. 487. Median dividers have likewise been held to be a reasonable exercise of the police power, and the damage caused an abutting owner by loss of access in one direction has been held a reasonable exercise of the police power and non-compensable. Turner v. State Roads Commission, 213 Md. 428, 132 A.2d 455; Langley Shopping Center, Inc. v. State Roads Commission, 213 Md. 230, 131 A.2d 690; City of Chicago v. Spoor, 190 Ill. 340, 60 N.E. 540; Gayton v. Department of Highways, Colo., 367 P.2d 899.

It is inevitable that in the construction of modern, high-speed, controlled-access interstate highways, there will be intersections between such through highways and secondary roads which will of necessity result in the barricading of such secondary roads at the point of such intersection to prevent uncontrolled access. This is necessary for the protection of the traveling public and is in the exercise of the police power. Warren v. Iowa State Highway Commission, supra. Such action, of course, will result in some inconvenience and circuity of travel to those property owners adjacent to such secondary roads to gain admission to the main system of through highways. It is well established in this jurisdiction that mere inconvenience resulting from the closing of a street does not give rise to a legal right in one so inconvenienced, when another reasonable, though perhaps not equally accessible, means of access to the main street system remains. Mandell v. Board of Commissioners of Bernalillo County, 44 N.M. 109, 99 P.2d 108.

We are not concerned in this case with the rule where an obstruction occurs or a street is closed or vacated in a municipality, but only with the rule as it applies to a highway in a rural area. Generally speaking, an obstruction placed in a highway by public authority reasonably necessary for the protection of the public is not a special injury to an abutting landowner. The injury is to the right to travel upon the highway which applied to the public generally.

We think the better rule, and the weight of the more recent decisions, is that one whose property abuts upon a road or highway, a part of which is closed or vacated, has no special damage if his lands do not abut upon the closed portion there-

of, if there remains a reasonable access to the main highway system. If one has the same access to the road or highway upon which his property abuts as before the closing of a portion thereof and there remains a reasonable, even though more circuitous, access to the general highway system, his injury is the same in kind, even though greater in degree, as that suffered by the general public and is damnum absque injuria.

In the case before us, the defendants' right of access to the road upon which their property abuts has not been affected. True, it has been obstructed some 800 feet north of their property preventing their further travel in that direction, but that is an injury suffered in common with the general public and is not compensable. They never had direct access to the new highway, constructed upon a different location, and are not entitled to direct access to it. D'Arago v. State Roads Comm., 228 Md. 490, 180 A.2d 488. It is true their travel to the main highway system can only be in one direction and the traveling public will find it less convenient to reach defendants' premises. This, however, is a common injury inevitable in the building of highways. We hold that the interchange, some 350 to 400 feet south of their premises, affords them reasonable access to the principal highway system of the state and that, therefore, their right of access to the principal highway system has not been substantially impaired.

Other points argued have been disposed of by what we have said, are not necessary to be determined, or are found to be without merit.

Finding no error, the judgment appealed from is affirmed.

IT IS SO ORDERED.

COMPTON, C. J., and CARMODY and CHAVEZ, JJ., concur.

MOISE, J., dissenting.

MOISE, Justice (dissenting).

The opinion in this case, to my mind, entirely disregards prior decisions by this court which seem to me to be controlling. I refer to Bennett v. Nations, 49 N.M. 389, 164 P.2d 1019, and Board of County Comm'rs of Lincoln County v. Harris, 69 N.M. 315, 366 P.2d 710, decided within the year.

In addition, while assertedly following the "better" rule and the "weight of the more recent decisions," to my mind the majority opinion does neither of these things as I shall undertake to demonstrate.

The factual situation in Bennett was very similar to the one here present. The road past plaintiff's property was not changed. However, defendant undertook to obstruct it by building a fence across the road a

short distance south of plaintiff's house. Plaintiff had used the road continuously in traveling to and from his farm and the public likewise made use of the road. The court points out that in addition to the inconvenience suffered by the public generally through blocking the road, the plaintiff was especially inconvenienced and injured through being denied passage from home to farm except by use of a much longer, unimproved and dangerous way requiring passage over private lands belonging to others. Plaintiff sought an injunction against defendant maintaining the fence, and for damages suffered. The court found the road was a public road; that defendant had wrongfully obstructed it; that because the obstruction blocked passage from plaintiff's home to her farm and back, she suffered an injury additional to that suffered by the public generally. That to be entitled to relief the injury must have been different from that suffered by the general public is clear. The rule is set forth in Bennett in the following approved quote from Young v. Rothrock, 121 Iowa 588, 96 N.W. 1105, 1107:

"The only other point involved is the right of plaintiff to enjoin the nuisance. It is said that he has no other interest than that of the general public, and that for that reason he cannot maintain the action. It is admitted, of course, that plaintiff must show he suffers some special damage distinct from that of the general public. The fact, however, that others sustain like damages is not controlling. The test is, does plaintiff suffer damage distinct from that of the general public? Park v. [Chicago & S. W.] R. R. Co., 43 Iowa 636. If, then, plaintiff has shown that the street which was obstructed led directly to his premises, and that the obstruction interfered with his access thereto, this is a sufficient showing of special damages to authorize him to maintain the suit. There is no difficulty with the rule, although its application is not always easy. Plaintiff has shown that, if deprived of the use of First street, he is compelled to go several blocks out of his way to reach the premises owned by him, which abut on the street, and are in the same block as defendants' icehouse and that First street gives him the only reasonable access to his property. This is a sufficient basis for his action. Hill v. Hoffman (Tenn.Ch.App.) 58 S.W. 929; Callanan v. Gilman, supra; [107 N.Y. 360, 14 N.E. 264, 1 Am.St.Rep. 831]; Dairy v. [Iowa Cent.] R. R. Co., 113 Iowa [716], 719, 84 N.W. 688."

I submit that if the damage to the plaintiff in Bennett was special and different from that suffered by the public generally, the same is true here. That the damage was done by a private citizen in that case

whereas here it is done by a public body does not alter this fact. To compare the situation here with that present in Board of County Comm'rs v. Slaughter, 49 N.M. 141, 158 P.2d 859, is, in my opinion, entirely unreasonable and illogical. In Slaughter the existing highway was left unchanged in any manner whatsoever, whereas here, the highway is being totally blocked in one direction. I submit that the controlling rationale is that found in Bennett and not in Slaughter. Likewise, Bennett explains in clear and unambiguous terms how a situation such as that here present fits into and conforms with the holding in Mandell v. Board of Comm'rs of Bernalillo County, 44 N.M. 109, 99 P.2d 108.

I cannot understand the majority's statement that the "rule where an obstruction occurs or a street is closed in a municipality" is not here involved, nor the statement that the injury is to the right to travel upon the highway which applies to the public generally. Bennett did not involve blocking of a city street, and it was there held that the damage to the property owner was different from that suffered by the public generally. Only if a different result follows from the fact that here the action is by public authority, whereas in Bennett it was by a private individual, can the total disregard of Bennett be justified. This brings us to the issue of whether or not the claim that the injury is non-com-

pensable because done pursuant to the police power can be supported.

Here, once again, the majority chooses to totally ignore a decision of this court, viz., Board of County Comm'rs of Lincoln County v. Harris, supra. In that case, while refusing to announce a rule to be applied in every case, we quoted with approval from Rose v. State of California, 19 Cal.2d 713, 123 P.2d 505, to the effect that regulation of traffic, or actions of an emergency nature necessary to protect life or property, can be supported as being within the police power of the state, and where property is damaged thereby the public is not required to pay compensation. An annotation generally on this subject may be found in 73 A.L.R.2d 689. Even in the area of regulation it will be seen from a reading of the cases that reasonableness in the circumstances is the controlling factor in determining if the regulation will be upheld under the police power and compensation denied. Iowa State Highway Commission v. Smith, 248 Iowa 869, 82 N.W.2d 755, 73 A.L.R.2d 680, supports this conclusion.

I cannot find any reasonable distinction between interfering with access to a piece of property by changing the grade, presumptively to accomplish a better and safer highway, as was true in Harris, and in interfering with free and convenient access by placing a barricade between the street on which the property fronts and

the highway. At least, as I view the situation here present, the question is one of reasonableness, which is a question of fact, not of law, and is to be determined in each case on the particular facts of the particular situation. Iowa State Highway Commission v. Smith, supra. If, under the facts here, the barrier is not deemed to materially interfere with appellant's free and convenient access, or to substantially impair the value of his property, he is not entitled to compensation. However, for substantial impairment of access or damage to his property values, he should be paid.

I pass now to the question of whether the proposed opinion sets forth the better rule or represents the weight of the more recent decisions.

That the general weight of authority is contrary to the position asserted by appellee is admitted in its brief.

Reference is made by the majority to Bacich v. Board of Control, 23 Cal.2d 343, 144 P.2d 818, with the implication that it was a hard case and, consequently, resulted in bad law, and attention is called to the fact that there were three opinions, including a dissent. The majority here, in their opinion, distinguish Bacich because it is not concerned with the rule as to obstruction beyond the next intersecting street, nor in rural areas. Though true, as already pointed out in my discussion of the New Mexico cases, I do not see why

a different rule is indicated. That there should be no difference is asserted in Lewis, Eminent Domain, § 205, and this conclusion is adopted in Department of Highways v. Jackson (Ky.1957), 302 S.W.2d 373, cited by the majority. I think it is a mistake to indicate otherwise.

Also, since the dissent of Justice Traynor in Bacich, supra, was based on his view that property owners have no easement of access to the streets, his position is contrary to the holding of the majority in our case to the effect that right of ingress and egress is a property right. Although no authority is cited, I think the statement is supported by most cases. The following authorities could be cited among literally hundreds of others: 38 Neb.L.R. 407, 411; 14 Ala.L.R. 160, 165; Blount County v. McPherson, 268 Ala. 133, 105 So.2d 117. It is implicit, it seems to me, in the holding in Board of County Comm'rs of Lincoln County v. Harris, supra. See also, 2 Nichols, Eminent Domain (3rd Ed.) § 6.-4442.

Lewis in his treatise on Eminent Domain (3rd Ed.) in § 191 recognizes there are states which deny compensation where the street is left open in front of the complaining party's property even though closed down the street, but states the better view, in his opinion, is that " * * * the private right of access is the right, not only to go from one's property to the street and from the street to the property,

but also to use the street in either direction as an outlet to the general system of highways." (§ 191, p. 350). Again, in § 202, the contrary Massachusetts rule is discussed, followed by pointing out that the Pennsylvania and Illinois cases are to the contrary, and he thinks them to be correct. See also, 2 Nichols, Eminent Domain, § 6.-4443[3], 49 A.L.R. 330, 351.

To like effect is the note in 93 A.L.R. 639, 642. At page 643–644, it is pointed out that New York, Chicago & St. Louis R. Co. v. Bucsi, 128 Ohio St. 134, 190 N.E. 562, 93 A.L.R. 632, cited by the majority, "does not seem in accord with the weight of authority * * *." The other two Ohio cases cited in the opinion merely follow the doctrine of the earlier case. In State ex rel. Merritt v. Linzell, 163 Ohio St. 97, 126 N.E.2d 53, the street fronting on the owner's property remained unchanged and was not blocked. In New Way Family Laundry, Inc. v. City of Toledo, 171 Ohio St. 242, 168 N.E.2d 885, it would appear that a medial divider was placed in the street so that circuity of travel of one mile in one direction and two miles in another resulted. This is, in effect, the same doctrine as is advanced in the Jones Beach Blvd. Estate, Inc. v. Moses, 268 N.Y. 362, 197 N.E. 313, 100 A.L.R. 487. However, Jones Beach Blvd. Estate, Inc. v. Moses makes it clear that recovery was denied because the ordinance providing for the medial divider and resulting in the circuitous travel was deemed a reasonable traffic regulation with no substantial injury shown.

In the instant case, I cannot see where police or traffic regulations are involved. They certainly are not under the definition used in Board of County Comm'rs of Lincoln County v. Harris, supra. Accordingly, I do not think we should enter into the realm of dictum as to what we would do in a medial divider case such as the Jones Beach Blvd. Estate case. It is sufficient for the purposes of this case to merely decide the cul-de-sac issue in connection with which I see no reason for not following what has generally been called the majority rule, 49 A.L.R. 351, and the better rule, Lewis, Eminent Domain, § 191.

It seems to me that the legislature of 1957, by its adoption of Chapter 234 dealing with controlled-access highways and providing in § 5 (§ 55–10–5, N.M.S.A.1953) for acquiring the same by purchase or condemnation, lends support to the idea that this is not a police power regulation but a damage by cutting off access to the old Highway 85, which should be paid for. This argument is well set forth in Smith v. State Highway Commission, 185 Kan. 445, 457, 346 P.2d 259.

Many of the cases state that the problem is one of application of a rule generally

agreed upon. Possibly, the difficulty arises from the manner of stating the rule. All the cases seem to agree that the owner of property has an easement in the street for reasonably convenient access to his land, or reasonable ingress and egress. However, what is the ingress to or the egress from in terms of the road to or from which a property owner has a right? Is it just to get on the street and then be able to get to a destination regardless of the difficulties intervening? Or, is it a right to get to the general system of roads and highways without unreasonable interference? See, 27 Wash.L.R. 111, at 119.

The court in Mandell v. Board of Comm'rs of Bernalillo County, supra, where a cul-de-sac situation arose, recognized in dicta a different rule from that which it applied under the facts of that case. The decision there was undoubtedly correct, under the particular facts. However, here, where the general system of roads was previously accessible directly from the property in either direction, and now can only be reached by traveling in one direction, an entirely different situation requiring a different result would seem to be presented.

The law on this subject is well summarized, to my way of thinking, in the article on "The Limited-Access Highway" by Owen Clarke, appearing in 27 Wash. L.R. 111, 121, from which the following is quoted:

"The uncertainty and confusion in the law is most apparent in the cul-de-sac cases where construction of a freeway blocks up streets which formerly had intersected the highway but which now terminate in a dead end. Some jurisdictions have declared that the creation of a cul-de-sac is compensable, although access still exists in the opposite direction to an intersecting street. Many other courts, however, have steadfastly refused to award compensation under such circumstances, maintaining that injury, if any, differs only in degree but not in kind from the damage suffered by the public.

"Some courts recognize the damage of one owner as compensable while at the same time refusing to make good the injuries of another owner a block further removed from the obstruction. Diminution in value of the properties involved in both instances is occasioned by the same public act, and may be of like magnitude. The mere inconvenience of traveling any additional distance necessitated by the obstructed street is not a compelling distinction, for it is difficult to justify the denial of compensation to one whose property is located directly beyond the first intersecting street while permitting recovery to the abutter owning the lot on the corner of the block in which the cul-

de-sac exists. *The ultimate test in cul-de-sac cases, as in all other cases involving access rights, should be whether there has been any substantial impairment of ingress and egress to the premises, considering its use and environment. That a property abuts upon a street which is closed at one end should not, per se, entitle the owner to damages, for, in fact, he may not have been damaged."* (Emphasis supplied.)

Of course, appellant is not entitled to be compensated for loss of business suffered as a consequence of changes in traffic patterns resulting from building the new highway, Board of County Comm'rs v. Slaughter, supra. However, in that case, it does not appear that if the old road had been blocked by a barrier where it met the new road (which is the fact here) damages, if substantial, because of interference with access as distinguished from damages for loss of business, would not have been allowed. It seems to me that here the case should be reversed and remanded so that damages can be determined, with instructions to the trial court that loss of business is not an element to be considered. I feel it is wrong to hold that the rule of damnum absque injuria is applicable.

For the reasons stated, I would reverse the decision of the trial court, and respectfully dissent from the opinion holding otherwise.