### CHARLES RANKIN v. THE STATE.

No. 1836. Decided May 2, 1900.

**1. Permitting Craps to Be Played in a House a Public Place.**

A defendant charged with permitting craps to be played in his house for retailing spirituous liquors is proven liable where the evidence showed that the crap playing was in a room partitioned off from the saloon and with a door opening into the bar of the saloon, although said partitioned room had been rented by defendant to one M. and was controlled by M. for gambling purposes.

**2. Ownership—Variance.**

Where the indictment charged a joint ownership in the house and the case was dismissed as to one of the alleged owners, and the proof showed the control and ownership in defendant, this did not constitute a variance.

**3. Joint Defendants—Liability Several.**

All crime is several even when committed by two or more persons jointly.

APPEAL from the County Court of Lavaca. Tried below before Hon. D. A. PAULUS, County Judge.

Appeal from a conviction for permitting a game of craps to be played in a house for retailing liquor; penalty, a fine of $50.

The opinion states the case.

No brief for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The indictment charged that appellant and Jim Rankin did unlawfully permit a game to be played with cards, and a game to be bet at and played with dice, called "craps," upon their premises and in their house, said premises and house then and there being a public place, to wit, a house for retailing spirituous liquors. Upon the trial appellant was convicted, and fined $50.

The evidence shows that Charles Rankin was the owner and proprietor of the saloon in question, and that Jim Rankin was his bartender. Bodkin testified that in March, 1899, while he was in the saloon, standing at the bar, he saw a number of men playing a game with cards in a room which had been cut off from the saloon portion of the house by a partition wall, having a door opening directly facing the bar. This room was properly part of the saloon, but had been

cut off by a partition wall. While standing there, witness saw men playing cards, and also saw a crap table. No one was playing craps at the time, but there was money on the table. Defendant was in the saloon at the time witness saw the parties engaged in the game with cards and at the time he saw, the crap table with money on it. There was other testimony going to show the saloon was used as a gambling room. It was also proved that defendant paid the liquor dealer's license for the running of this establishment as a saloon. It was also admited by appellant that the property was his, and that he alone was the owner and proprietor of the saloon. Jim Rankin testified in behalf of appellant that he was the brother and in the employ of Charles Rankin as bartender in the saloon; that he had the management and control of it, and, without asking his brother's consent, had the room cut off by a partition wall, which he rented to one Moore; the expense attached to fixing up this room was taken out of the business funds of appellant; that he rented the room to Moore for $12.50 per month. This partition wall did not reach the ceiling. He further stated that Moore used this room for gambling purposes, and that he had seen men playing cards in the room; that he had not seen a game of craps played, but had heard the "call of the game craps," and by that means knew that they were "shooting craps" in said room, and that his brother knew of the ʹuse of the room. Appellant asked a special charge to the effect that if, from the testimony, the jury believed the room where the card playing was done, which had been rented to Dud Moore, was at the time under the control of Moore, they would acquit defendant. This charge was refused. We believe the court did not err in refusing the charge. The room was in the saloon of appellant, and therefore on his premises, and it would be immaterial, under the circumstances, that the room may have been controlled for gambling purposes by Moore. Nor is there any merit in the contention that there was a variance between the allegation and proof in regard to ownership. The indictment charges the two Rankins with ownership. Charles Rankin was alone tried and convicted. There was no variance in the fact that the proof showed the control and ownership in appellant. They could be thus joined and tried separately, and one convicted and the other acquitted. In this particular instance it seems the case was dismissed as to Jim Rankin, and proceeded to trial only as to appellant. The use of the word "their" in alleging ownership, instead of "his," does not vitiate, even if it were a single indictment against one of them. Snow v. State, 6 Texas Crim. App., 284. All crime is several, even when committed by two or more persons jointly. State v. Brown, 49 Vt., 437. And to the same effect is Webb v. State, 17 Texas Crim. App., 205; Watson v. State, 28 Texas Crim. App., 34; Finnney v State, 29 Texas Crim. App., 184. There being no error in the record, the judgment is affirmed.

*Affirmed.*