IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 1, 2025

## ANDREW ROGERS ET AL. v. VICTORIA COX

**Appeal from the Circuit Court for Washington County**
No. 41570      Suzanne Cook, Judge

_____

### No. E2024-01245-COA-R3-CV

_____

Property owners brought an action seeking an injunction to prohibit an adjoining property owner from blocking access to their properties. The trial court granted the request for an injunction after concluding that the land at issue was a public road that had not been abandoned. The adjoining property owner appealed. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, and CARMA DENNIS MCGEE, JJ., joined.

Jeffrey A. Cobble, Greeneville, Tennessee, for the appellant, Victoria Cox.

Kenneth Justin E. Hutton, Johnson City, Tennessee, for the appellees, Andrew Rogers and Rosemary Rogers.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

This appeal concerns a property dispute between owners of adjoining real property in Johnson City, Tennessee ("the City"). Andrew and Rosemary Rogers ("the Rogerses") reside at 1407 Virginia Street.[1] They purchased their property in 2019 and rented it to tenants until eventually moving in themselves. Located next to the Rogerses' property is 1411 Virginia Street. Margaret Ward owns this property, and she has resided there since

---

[1] Virginia Street was formerly known as Cherokee Street.

1964. In July 2020, Victoria Cox purchased the property located at 1409 Virginia Street. Her property is undeveloped and sits directly behind the Rogerses' house.

If a person is facing all of these properties from Virginia Street, the Rogerses' house is on the left, and Ms. Ward's house is on the right. A strip of land runs between the Rogerses' and Ms. Ward's houses. The strip is approximately forty feet wide and one hundred seventy feet long. Ms. Cox's property is located at the end of this strip of land. The forty-by-one-hundred-seventy-foot strip of land is the subject of the parties' dispute in this case. For clarity, we will refer to the strip of land at issue as "the disputed land" and include the following image[2] depicting the layout of the area at issue:



When the Rogerses purchased their property in January 2019, there was a parking pad attached to the back of the home. The parking pad connected to a driveway that, when travelling away from Virginia Street and towards Ms. Cox's property, turned left off of the disputed land. Ms. Ward's house has a two-car garage attached to it. The entrance to the garage connects to a driveway that similarly turns right off of the disputed land. Thus, prior to Ms. Cox purchasing her property, both the Rogerses and Ms. Ward drove upon the disputed land to reach their respective driveways and garage or parking area. Since purchasing her lot, Ms. Cox also drives upon the disputed land to access her property; she can also access her property via a ten-foot-wide alley in a different location that is not at issue in this case.

After their tenants moved out, the Rogerses planned to move into the home at 1407 Virginia Street. Before moving in, however, they met with Ms. Cox in late 2021 to discuss whether she planned to begin construction on her lot in the near future because, if so, the

---

[2] The parties did not introduce the image as an exhibit. It appears to have been created by the trial court and was included in the court's final order. Like the trial court, we include it only for illustrative purposes.

Rogerses might delay moving into their home to avoid potential dangers to their young children. Ms. Cox informed them that she had no such plans, so the Rogerses decided to move into their home. The Rogerses then informed Ms. Cox that they intended to have various construction projects done on their property, including building a detached garage. Ms. Cox responded that they could continue using the disputed land to reach the area where they currently had a parking pad but that they did not have her permission to build a garage farther down on their property because, to access it, they would have to traverse more of the disputed property, which she considered solely owned by her. There was also some discussion of the disputed land being a shared driveway.

Following the meeting with Ms. Cox, the Rogerses thought there was a mutual understanding that the disputed land would continue to be a "shared driveway." Thus, they hired Jason Ramsey, a licensed general contractor, to remove a small retaining wall, install a French drain, and remove the parking pad attached to the back of their home. The Rogerses needed the French drain installed along the right side of their property (parallel to the disputed land) to prevent water from leaking into their basement. When Mr. Ramsey began the work on the Rogerses' property, he parked his equipment, equipment trailer, and dump truck on the disputed land because it was the only means of direct access to their property. There was some gravel on the disputed land, but Mr. Ramsey added more to ensure his equipment did not damage the property. The work the Rogerses hired him to perform required that some dirt be turned over, but Mr. Ramsey hauled away the refuse he created and regraded the disputed land "anywhere that [he] touched, so it was smooth gravels."

After installing the French drain and removing the retaining wall and parking pad, Mr. Ramsey dug a spot to install a new parking pad for the Rogerses. Ms. Cox noticed that some of the dirt displaced by that project was spread out on the disputed land. Still believing that the disputed land was solely her property, Ms. Cox confronted Mr. Rogers and accused him of encroaching on her property. He offered to have the area surveyed if she would pay for half the cost; she declined the offer. Ms. Cox then parked a vehicle on the disputed land, temporarily blocking the Rogerses' access to their driveway, and she demanded that they seek written permission for any use of the disputed land. However, Ms. Cox never demanded that Ms. Ward seek permission to drive upon the disputed land and never blocked Ms. Ward's access to her driveway and garage.

In March 2022, Ms. Cox hired a fencing contractor to build a fence on the disputed property even though she did not know where the actual property lines were located because she had never obtained a professional survey of her property. Rather, Ms. Cox walked the properties with a metal detector to find metal pins and laid out string; she then told the fencing contractor to build the fence where she placed the string. Following Ms. Cox's instructions, the fencing contractor installed the fence fifteen feet from the Rogerses' house. The fence runs parallel to the side of their house and completely obstructs access to the rear of their property. The Rogerses and anyone who visits them must now park on the

street in front of their house or in their front yard.[3] Furthermore, the Rogerses had to stop the construction that was underway on their property because Mr. Ramsey could no longer access the rear of their property with his equipment.

The situation finally came to a head when the Rogerses needed to have a washer and dryer delivered. They requested permission to use the disputed land for the delivery, and Ms. Cox refused. On May 13, 2022, the Rogerses and Ms. Ward (collectively, "the Plaintiffs") filed a complaint in the Circuit Court of Washington County seeking an injunction prohibiting Ms. Cox from blocking access to their properties. They claimed they were entitled to injunctive relief because "a permanent implied easement appurtenant by prior use" existed across Ms. Cox's property or, alternatively, because "a permanent implied easement appurtenant by necessity" or by estoppel existed across Ms. Cox's property. Thereafter, Ms. Cox filed an answer claiming that the conditions for an implied easement appurtenant by prior use, necessity, and estoppel had not been met and asserting several affirmative defenses, including statute of frauds, failure of consideration, equitable estoppel, license, and laches. She also asserted a counterclaim alleging that the Rogerses trespassed on her property.

After filing an answer to the counterclaim, the Plaintiffs filed a motion requesting permission to amend the complaint to include allegations that the disputed land is a "shared roadway" because all of the deeds in their respective chains of title refer to the disputed land as "E. Highland, formerly 3rd Street" and that they are, therefore, entitled to access under a claim of right. The trial court allowed them to file the amended complaint and, on December 26, 2023, Ms. Cox filed an answer identifying the following as additional affirmative defenses: (1) "[i]t is denied that any portion of the Cox property was ever dedicated to 'public use' by any of the Cox predecessors-in-title, and strict proof of the same from relevant deeds and/or court orders is demanded," and (2) "[i]t is denied that any portion of the Cox property was ever deemed to be 'open' as a roadway or shared driveway by any proper legal authority, and strict proof of the same from relevant deeds and/or court orders is demanded."

After hearing the matter, the trial court entered an order on May 1, 2024. The court found that the disputed land was a public road and that Ms. Cox did not provide sufficient evidence that the City abandoned the road. Based on that finding, the court concluded that Ms. Cox's fence was a trespass, ordered her to remove it immediately, and enjoined her from interfering with and/or restricting the Rogerses' and/or Ms. Ward's access to the disputed land. Ms. Cox filed a motion pursuant to Tenn. R. Civ. P. 52.02 requesting that the court amend its judgment or make additional findings of fact. In particular, she requested that the court amend its order to find that her deed contained a legal description

---

[3] According to the Rogerses, they cannot create a driveway on the opposite side of their house because the slope on that side of the house is too steep. They also claim that they cannot drive on the fifteen-foot strip of land between the fence and their house because it would damage the French drain they had installed.

that "affirmatively includes the 'disputed land'" and that she has been paying taxes on the disputed land.[4] She then moved the trial court to reform her deed to remove the disputed land from her legal description and to add the City to the litigation due to the court's finding that the disputed land was a public road. The court entered an order denying the motion. As to the request to join the City as a party to the litigation, the court held that the issue was waived because it was not raised prior to the trial.

Ms. Cox timely appealed and presents the following issues for our review: (1) whether the trial court erred when it entered a judgment that went beyond the scope of the pleadings, (2) whether the trial court erred when it entered a judgment in favor of a non-party, and (3) whether the evidence supports the trial court's finding that the disputed land was a public road. The Plaintiffs present an additional issue for review: whether they are entitled to recover damages for a frivolous appeal under Tenn. Code Ann. § 27-1-122.[5]

STANDARD OF REVIEW

When a case is tried without a jury, we review the trial court's findings of fact de novo with a presumption of correctness, unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Lay v. Wallace*, No. W2011-02285-COA-R3-CV, 2013 WL 654360, at *1 (Tenn. Ct. App. Feb. 21, 2013). The evidence preponderates against a trial court's factual finding if it "support[s] another finding of fact with greater convincing effect." *Lay*, 2013 WL 654360, at *1. If the resolution of an issue hinges on the credibility of witnesses, the trial court, "who has the opportunity to observe the witnesses in their manner and demeanor while testifying, is in a far better position than this Court to decide those issues." *Id.* (citing *Mach. Sales Co., Inc. v. Diamondcut Forestry Prods., LLC*, 102 S.W.3d 638, 643 (Tenn. Ct. App. 2002)). Therefore, we give great weight to the trial court's credibility findings. *Id.* We review a trial court's conclusions of law de novo with no presumption of correctness. *Id.*

---

[4] On appeal, Ms. Cox also asserts that she paid taxes on the disputed land. Although Ms. Cox testified that she paid property taxes, the record contains no evidence showing that the property taxes assessed against her included the disputed land.

[5] We note that the Plaintiffs strenuously object to the quality of Ms. Cox's appellate brief. In particular, the Plaintiffs appear to take issue with Ms. Cox not citing to trial testimony in the "Statement of Facts" section of her brief. A review of Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure, however, shows that Ms. Cox was not required to cite to the trial testimony. That rule merely requires that she support her contentions with "appropriate references to the record." TENN. R. APP. P. 27(a)(7). Much of Ms. Cox's brief concerns the parties' pleadings, and her brief includes citations to those pleadings in the record. The Plaintiffs' argument on this issue is unavailing.

ANALYSIS

I.     Whether the trial court's judgment went beyond the scope of the pleadings

We begin with Ms. Cox's argument that the trial court erred in entering a judgment that granted relief beyond the scope of the parties' pleadings. Her argument here focuses on the court's finding that "the disputed land is a public road, and that Cox fails to prove by clear and convincing evidence that the City abandoned the road." According to Ms. Cox, none of the parties' pleadings sought to determine whether the disputed land was a public road.

Ms. Cox is correct that neither the original complaint nor her answer to that complaint contained any allegations relating to the disputed land being a public road. The amended complaint, however, contains a claim that the Plaintiffs had a right to access the disputed land due to it being a "shared roadway" referred to in their respective chains of title as "E. Highland, formerly 3rd Street." Furthermore, Ms. Cox asserted two additional affirmative defenses related to such. Specifically, she expressly denied that any portion of her property "was ever dedicated to 'public use'" and that any portion of her property "was ever deemed to be 'open' as a roadway or shared driveway." These pleadings are sufficient to raise the issue of the disputed land's status as a public road.

Even if the foregoing failed to raise the issue in the pleadings, the parties filed an agreed stipulation prior to trial that expressly stated that "Plaintiffs may present [at trial] any claim for an easement, whether they be *implied easements by dedication*,[6] implied easements by prior use, and/or an easement by prescription." (Emphasis added). Ms. Cox's attorney signed the agreed stipulation and, before the swearing of the first witness, acknowledged in open court that she was prepared to defend the case against the same three legal theories stated in the agreed stipulation. Furthermore, the Plaintiffs raised the issue throughout the trial. Notably, the Plaintiffs' attorney extensively questioned Ms. Cox's expert witness regarding whether the disputed land had been dedicated for public use and whether it was a public road. The Plaintiffs' attorney also questioned other witnesses about the public's use of the disputed land and introduced into evidence several exhibits related to the disputed land being dedicated for public use. Ms. Cox did not object to any of this evidence. Tennessee Rule of Civil Procedure 15.02 provides that, "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." *See also McLemore v. Powell*, 968 S.W.2d 799, 803 (Tenn. Ct. App. 1997) ("Generally speaking, trial by implied consent will be found when the party opposed to the amendment knew or reasonably should have known of the evidence relating to the new issue, did not object to this evidence, and was

---

[6] As will be discussed later in this opinion, property can become a public road by express or implied dedication.

not prejudiced thereby."). Thus, even in the absence of sufficient pleadings, the issue was tried by the consent of the parties.

Ms. Cox's argument on this issue is unavailing.

II.     Whether the trial court erred in entering a judgment in favor of a non-party

Ms. Cox next contends that the trial court erred in entering a judgment in favor of a non-party. Her argument here focuses on the following factual findings made by the trial court:

> [A]s recently as 2020, the road [the disputed land] was identified as Third Street, and the City of Johnson City expressly abandoned the right of way to a portion of Third Street (the portion directly across the disputed land on the opposite side of Virginia Street) upon the petition by Ward's son. No evidence was introduced at trial that the portion of Third Street running between [the Rogerses'] and Ward's properties and along part of Cox's property, has ever been closed nor abandoned pursuant to statutory authority nor action of any governmental body.
>        Accordingly, the Court finds by a preponderance of the evidence that the disputed land is a public road, and that Cox fails to prove by clear and convincing evidence that the City abandoned the road.

According to Ms. Cox, the language quoted above renders the trial court's judgment void because it takes the disputed land from her and awards it to the City, which was not a party in the case. Ms. Cox made this argument in her motion to alter or amend, and the trial court denied the motion on the ground that she had waived this issue. Because Ms. Cox failed to raise joinder of the City in accordance with the procedural rules discussed below, we agree with the trial court.

Tennessee Rule of Civil Procedure 8.03 requires that a party, "[i]n pleading to a preceding pleading," shall set forth his or her affirmative defenses "in short and plain terms." Ms. Cox demonstrated that she understood this requirement because, as discussed in the previous section, Ms. Cox filed an answer to the amended complaint that set forth two affirmative defenses—that the disputed land was never dedicated for public use and that it had never been opened as a roadway. She failed, however, to "set forth affirmatively" any facts alleging that the Plaintiffs failed to join the City as a necessary party for determining whether the disputed land was dedicated or "open" for public use. TENN. R. CIV. P. 8.03.

Tennessee Rule of Civil Procedure 12.02(7) also applies to this case. That rule states, in pertinent part, as follows:

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion in writing . . . failure to join a party under Rule 19.

TENN. R. CIV. P. 12.02(7). The record before us contains no Rule 12.02(7) motion alleging the defense that the Plaintiffs failed to join the City as a party under Rule 19.

Lastly, as relevant here, Tenn. R. Civ. P. 12.08 provides as follows:

A party waives all defenses and objections which the party does not present either by motion as hereinbefore provided, or, if the party has made no motion, in the party's answer or reply, or any amendments thereto, (provided, however, the defenses enumerated in 12.02(2), (3), (4) and (5) shall not be raised by amendment), except (1) that the defense of failure to state a claim upon which relief can be granted, *the defense of failure to join an indispensable party*, the defense of lack of capacity, and the objection of failure to state a legal defense to a claim *may also be made* by a later pleading, if one is permitted, or by motion for judgment on the pleadings or *at the trial on the merits* . . . .

*See also Kerney v. Endres*, No. E2010-02217-COA-R3-CV, 2011 WL 5331690, at \*5 (Tenn. Ct. App. Nov. 7, 2011) (quoting *Griswold v. Income Props., II*, 880 S.W.2d 672, 678 (Tenn. Ct. App. 1993)) ("'[F]ailure to join an interested or indispensable party must be raised no later than a trial on the merits.'"). We have thoroughly reviewed the transcript from the trial of this matter and find that Ms. Cox did not, at any point, object that the City was an indispensable party that had not been joined to the litigation. Rather, she waited until after the court entered its order to finally assert an objection to the City not being a party.

Based on the foregoing, we conclude that Ms. Cox waived this issue.

III.    Whether the evidence supports the trial court's finding that the disputed land is a public road

Ms. Cox next contends that the evidence does not support the trial court's finding that the disputed land was a public road. To establish that a piece of property is a dedicated public right-of-way, a party must show that there was "an offer of dedication and a public acceptance of the offer." *W. Meade Homeowners Ass'n, Inc. v. WPMC, Inc.*, 788 S.W.2d 365, 366 (Tenn. Ct. App. 1989). The offer of dedication and the public acceptance may both be implied or express. *Id.*

A. Whether there was an offer to dedicate the disputed land for public use

We will first consider whether the evidence shows that the disputed land was offered for public use. We discern from the Plaintiffs' appellate brief that their position here and at trial is that there was an implied offer by the original property owner to dedicate the disputed land for public use. When a party claims there was an implied dedication, "the focus of the inquiry is whether the landowner intended to dedicate the land to a public use." *Rogers v. Sain*, 679 S.W.2d 450, 453 (Tenn. Ct. App. 1984). "The proof on the issue of intent to dedicate must be unequivocal, but intent may be inferred from surrounding facts and circumstances, including the overt acts of the owner." *Id.* (citations omitted).

Courts have considered the following factors indicative of an intent to dedicate: "the landowner opens a road to public travel; acquiescence in the use of the road as a public road; and the fact the public has used the road for an extended period of time." *Id.* (citations omitted). Additionally, when a property owner subdivides his or her property into lots and then sells those lots with reference to a survey or plat "describing [said lots] as bounded by streets," courts have considered that to be an indication that the landowner intended to dedicate the referenced streets. *Baker v. Butler*, 364 S.W.2d 916, 921 (Tenn. Ct. App. 1962) (citation modified). Indeed, such "a sale of lots with reference to such a plat" by a landowner "will amount to an irrevocable and immediate dedication, binding on both vendor and vendee." *Id.* (citation modified). As we will discuss below, this factor is particularly relevant in the present case.

The record shows that, in 1905, Mollie White inherited a large parcel of land, which was part of the Young Farm. The trial court referred to the land inherited by Mollie White as "the White Plat," and we will do the same for ease of reference. The parties agree that the 1905 deed to Mollie White from the Clerk and Master of Johnson City, Tennessee, E.A. Shipley, is the unified deed from which all of their properties were created. The deed Mollie White received in 1905 includes the following language:

> It is understood and agreed between the parties that the street as shown by plat of W.J. Johnson is set apart as such, and will be opened up for public use, also a street from the old county road to Jones' corner in a straight line.

Thus, when Mollie White received the 1905 deed, the large parcel of land she inherited contained two streets open for public use.

A review of the chain of title for Ms. Ward's property shows that, in 1906, Mollie White sold a portion of the White Plat (approximately two acres), and that deed included the following language in the property's description: "Beginning at a stake the southeast corner of Cherokee and Second streets, then with the line of said second street north 58 degrees E. 401 feet to a stake." The deeds for subsequent transfers of the 1411 Virginia

Street property also reference Second Street, but the portion of the property bordering Second Street was reduced from 401 feet to 150 feet.

Then, a deed correction from 1911 includes language describing the property as "beginning at a stake at the southeast corner of Cherokee and Second Streets . . . thence running with the line of West Highland Road (formerly Second Street) . . . ." The deed Ms. Ward received in May of 1976 included a similar description of the property, stating, in pertinent part, as follows: "BEGINNING at the southeast corner of the intersection of Virginia (formerly Cherokee) Street and west Highland Road (formerly Second Street); thence running along the southerly side of West Highland Road North fifty-nine (59) degrees East one hundred fifty (150) feet." Thus, as the trial court found, from the first deed creating 1411 Virginia Street until the transfer to Ms. Ward, all of the deeds identify the northern boundary of the property as being the disputed land and refer to it as a road called "Second Street" or "West Highland Road."

The historical deeds for Ms. Ward's property are not the only ones that include a reference to the disputed land as "Second Street." Located behind Ms. Ward's property are three properties that front a street known as Magnolia Avenue. The rear boundaries of these three Magnolia Avenue properties were also once part of the White Plat, and the rear boundaries of these properties abut Ms. Cox's property. A review of the deeds for the three Magnolia Avenue properties shows that all three identify "2nd Street" as a metes and bounds description for the rear boundary of their properties.

As for the Rogerses' property, a review of the chain of title for 1407 Virginia Street shows that, in 1909, Mollie White sold another portion of the White Plat, and that deed describes the property thusly:

Being part of the Young farm and located in Block No (2) of the White subdivision and being lot no. 11 of said block and fronting (67) feet on the east side of Cherokee Street and extending back of even width 170 feet along the north side or line of third street, adjoining the lots of Taylor and others. . . .

The Rogerses became the owners of 1407 Virginia Street after nine transfers of ownership. Their deed identifies the disputed land as the southern boundary of 1407 Virginia Street and describes it as "170 feet along the north side of East Highland Road (formerly Third St.) . . . ." In total, the Plaintiffs produced ten deeds for the 1407 Virginia Street property. Although the name of the disputed land was modified—Third Street to East Highland Road—and the width of the disputed land varied from twenty-five feet to forty feet, all ten deeds identify the disputed land as the southern boundary of the property and refer to it as a named road.

Turning to the 1409 Virginia Street property purchased by Ms. Cox, the deed she received describes the property as follows:

> Beginning at the southeasterly corner of Lot No. 16 on the Easterly side of Virginia Street and which point is 155 feet, more or less from the southeasterly intersection of Franklin Street and Virginia Street; thence along the southerly lines of Lots 16, 15, 14, 13, 12, 11, and 10 a distance of 415 feet, more or less to the southeasterly corner of Lot No. 10 owned by Ollie White; thence in a southerly direction a distance of 200 feet more or less and parallel in part with a 20 foot right of way to the northeasterly corner of Lot 21; thence in a westerly direction with the line of Lot 21 50 feet, more or less, to a point; thence with the divisional line of Lots 22, and 21 a distance of 5 feet, more or less, to the northeasterly corner of Lot No. 22; thence along the northeasterly line of Lots 22, 23, 24 and 25, 340 feet more or less to a point in the easterly side of Virginia Street; thence northeasterly along the easterly side of Virginia Street 25 feet to the southwest corner of Lot No. 20, thence with the southerly line of Lot 20, 165 feet to the southeasterly line of Lots 20, 19, 18 a distance of 150 feet to the northeasterly corner of Lot 18; thence westerly along the line of Lot 18, 70 Feet to the easterly side of Virginia Street; thence along the easterly side of Virginia Street 20 feet in a northerly direction to the point of beginning as shown plat of Johnson City, Tennessee, by Hunnicut and Associates, on Sheet C-6 in the City Engineer's office, Johnson City, Tennessee.[7]

Although this description of the property does not mention the existence of a road, Ms. Cox's deed does contain a statement that the deed is "expressly subject to all covenants, conditions, restrictions and reservations in former deeds and other instruments of record applicable to said property." In other words, Ms. Cox's rights to her property are subject to the covenants, conditions, restrictions, and reservations contained in the deeds for the Rogerses' and Ms. Ward's properties, including references in those former deeds to the disputed land being a road that served as a boundary for their respective properties.

Additionally, in June 1991, the 1409 Virginia Street property was subject to a judicial sale when the prior owners of the property, F.E. and Kathryn Lilly, failed to pay the taxes owed on the property. The Lillys were able to repurchase the property at this sale, and the deed they received from the Johnson City Clerk and Master contained the same description as appears in Ms. Cox's deed but included the following statement: "W. Highland Road, 1.2 acres, Map 54K, Group B, Parcel 1.00, Deed Book 470, page 19." This

---

[7] The first transfer of the 1409 Virginia Street property occurred in 1973 when it was transferred to F.E. Lilly and Kathryn M. Lilly. The quitclaim deed they received in 1973 included a description of the property that is identical to that in Ms. Cox's deed, except that the 1973 deed includes the following statement: "This being a portion of the property inherited by the grantor herein and the other heirs of Mary E. White sometimes known as Mollie White."

- 11 -

same language appears in a subsequent deed in 1992 transferring the property from F.E. Lilly to Thelma White Loggans. At trial, Tyler LaRue, Ms. Cox's expert witness, opined that this reference to West Highland Road was, in fact, referring to the disputed land.

Ms. Loggans later divided her interest in the property with her siblings, and a deed from 1998 reflects that transfer. The 1998 deed removed the reference to "W. Highland Road," and that reference does not appear in any other deed in Ms. Cox's chain of title. The record does not indicate a reason why the subsequent deeds omitted the reference to "W. Highland Road," but Mr. LaRue testified that Ms. Cox's deed contains numerous errors, including in the legal description of the property and in the acreage. According to Mr. LaRue, the errors in Ms. Cox's deed go back to the original deed in the chain of title and occurred because a land survey of the property had not been performed. Rather, the property description was based on an aerial survey.

The foregoing deeds, dating back well over a century, show that the disputed land existed and was identified as a street or road open for public use at the time Mollie White began subdividing the White Plat into lots and selling those lots. It is unclear why the historical deeds for the parties' properties refer to the disputed land by various names, but there is no dispute that they all identify the disputed land as a street or road. Thus, the evidence shows that Mollie White intended to dedicate the disputed land for public use. *See Baker*, 364 S.W.2d at 921 ("[D]escribing [said lots] as bounded by streets . . . will amount to an irrevocable and immediate dedication, binding on both vendor and vendee.").

### B. Whether there was public acceptance of the offer to dedicate

Ms. Cox next asserts that the record contains no evidence that the disputed land was accepted for public use. In particular, Ms. Cox argues that, for the Plaintiffs to establish there had been a public acceptance of the offer to dedicate the disputed land, they had to produce "a map placed of record" showing the disputed land identified as a street, which the Plaintiffs failed to do. Respectfully, that is not the law in this state.

This Court has explained the proof required to establish public acceptance of a road as follows:

> In addition to proof of the owner's intention to dedicate the road to public use, persons seeking a judicial declaration that a road is public must also prove that the road has been accepted for public use. This proof is relatively straightforward. *A formal act by public authorities or common use by the general public* constitutes sufficient evidence of the acceptance of an owner's offer of dedication.

*Dennis v. Miceli*, No. M1997-00056-COA-R3-CV, 1999 WL 1072559, at *3 (Tenn. Ct. App. Nov. 30, 1999) (emphasis added). We have further stated that an order of a county

court "'laying [a road] off as a public road, or adopting it as a public road'" is not essential. *Second Chance Farms, Inc. v. Perry Cnty.*, No. M2000-00513-COA-R3-CV, 2001 WL 219642, at *4 (Tenn. Ct. App. Mar. 7, 2001) (quoting *Hill v. Hoffman*, 58 S.W. 929, 932 (Tenn. 1899)). "'If it was dedicated to the public and used by the public it became a public road, even if it was never worked by the county.'" *Id.* (quoting *Hill*, 58 S.W. at 932) (internal citation omitted). Thus, contrary to Ms. Cox's assertion, proof of public acceptance is not limited to the specific formal act of identifying a road in a "map placed of record."

A review of the record shows that the Plaintiffs produced a plethora of evidence showing that the disputed land had been accepted for public use. For instance, the Plaintiffs produced evidence of formal acts by the City indicating it had accepted the disputed land for public use. The record contains the following zoning maps for Johnson City from 1951 and 1963:



| 1951 Johnson City, Tennessee Zoning Map | 1963 Johnson City, Tennessee Zoning Map |

What is now Ms. Cox's property is highlighted in yellow, and the disputed land is highlighted in red. Although the City did not identify the disputed land by a street name in these maps, the City did identify the disputed land in both maps as being similar in width to other named streets and as being separate from Ms. Cox's property. The record contains several other City maps that do not delineate driveways; these maps depict the presence of a road where the disputed land is located.

The record also contains evidence showing that, in October 1929, a parcel of land was deeded to the City for the express purpose of "connecting West Highland Road with Virginia Street." For reference, we include a portion of an exhibit marked as "Exhibit D2":

- 13 -



The highlighted property identified as 38.01 is the property deeded to the City in 1929. The property identified as 1.00 is Ms. Cox's property. Ultimately, the City never connected West Highland Road with Virginia Street. Mr. LaRue examined this exhibit along with the deed expressly dedicating 38.01 to the City for road purposes and agreed that, to connect West Highland Road with Virginia Street, the City would have needed to connect West Highland Road to the portions of "Third Street" listed in the Plaintiffs' deeds.

Even more persuasive than the evidence discussed above, Ms. Ward's son, Brent Ritchie, testified that he owned property located at 1408 Virginia Street (directly across the street from the Rogerses' property). When he bought the property, he discovered a City tax map showing the existence of a road running between his property and his neighbor's property located at 1412 Virginia Street. The tax map identified the road as "Third Street." Mr. Ritchie petitioned the City to abandon this right-of-way. The Plaintiffs entered his petition into evidence, and it included the following map:



This map clearly identifies Mr. Ritchie's property at 1408 Virginia Street, the Rogerses' property at 1407, and Ms. Ward's property at 1411. The strip of land marked with diagonal stripes identifies the location of "Third Street" that Mr. Ritchie petitioned the City to

abandon—directly across from and in line with the disputed land, which the deeds for Ms. Ward's property refer to as Third Street. The City granted Mr. Ritchie's petition and abandoned its right-of-way over the portion of Third Street marked with diagonal stripes in 2020.

The Plaintiffs also produced evidence showing that the disputed land had been accepted by common use by the general public. Although the disputed land was never paved and the City did not maintain it, the record includes several photographs showing curb cuts present at the entrance to the disputed land with some gravel present on the land. The various photographs show that vehicles have traveled upon the disputed land and that driveways to the Rogerses' and Ms. Ward's properties turned off of it. Ms. Ward testified that she has lived at 1411 Virginia Street since 1964[8] and has driven upon the disputed land on a nearly daily basis since 1964. Indeed, she testified that, since 1964, all of her neighbors and their predecessors-in-title used the disputed land in the same manner that she has. Mr. Ritchie, Ms. Ward's son, corroborated her testimony. He was three years old when he and Ms. Ward moved into 1411 Virginia Street in 1964, and he lived there much of his life. As a child, Mr. Ritchie rode his bicycle up and down the disputed land and, when he was older, he drove his car upon the disputed land. Mr. Ritchie further testified that, in 1971, the garage on Ms. Ward's property was renovated to include an apartment for his grandmother. His grandmother then regularly drove upon the disputed land to access the apartment over the garage. Ms. Rogers testified that she, her husband, and their tenants had all driven upon the disputed land on a regular basis until Ms. Cox blocked their access by building a fence. All the testimony shows that, until Ms. Cox bought her property in 2020, no one ever told any of these people that they could not drive upon the disputed land.

In addition to all of the owners and tenants of these properties driving upon the disputed land since at least 1964, there was testimony that, prior to Ms. Cox installing her fence, their guests had driven upon the disputed land when visiting these properties. Delivery drivers also drove upon the disputed land when making deliveries to these properties, and utility trucks regularly drove upon the disputed land to read the Rogerses' water meter, which is located on the disputed land.

Ms. Cox admitted that all of this use was evident at the time she purchased her property and that all of the property owners and their guests/invitees are members of the public, but she contends that this use of the disputed land was insufficient to constitute public use. She cites to no caselaw supporting her contention. Instead, she merely points to Mr. LaRue's testimony that he did not believe that such use amounted to use by the public. The trial court found his testimony on this issue not credible, expressly finding that it "strains credulity." This Court will not reevaluate a trial court's assessment of witness credibility "absent clear and convincing evidence to the contrary." *Franklin Cnty. Bd. of*

---

[8] Ms. Ward's mother owned the property when Ms. Ward began living there in 1964. Her mother transferred the property to Ms. Ward in 1973.

*Educ. v. Crabtree*, 337 S.W.3d 808, 811 (Tenn. Ct. App. 2010). Ms. Cox points to no evidence, much less clear and convincing evidence, contradicting the trial court's credibility assessment, and we found none in our thorough review of the record before us. We, therefore, give great weight to the trial court's credibility assessment in determining this issue. *See Mach. Sales Co., Inc.*, 102 S.W.3d at 643.

We also note that, after conducting an exhaustive search of the relevant caselaw, this Court has found no case stating that a large number of people must use a road for it to constitute common use by the general public. Rather, the courts of this state have merely held:

> "In the absence of evidence to show the establishment of a highway by public authority, it is made out at common law by showing that *the public have used and enjoyed it*, and their actual occupation of it for a considerable space of time, without interruption, affords a strong presumption of a right to use it."

*Webb v. Douglas*, No. W2014-00299-COA-R3-CV, 2014 WL 6908296, at *7 (Tenn. Ct. App. Dec. 9, 2014) (quoting *Current v. Stevenson*, 116 S.W.2d 1026, 1027 (Tenn. 1938)) (emphasis added). Though limited in number, the parties in this case, their predecessors-in-title, their guests, and the various delivery truck drivers and utility truck drivers who have used the disputed land and enjoyed it since at least 1964 are undisputably the public. Furthermore, as the trial court held, "'An enterprise does not lose the character of a public use because of the fact that its service may be limited by circumstances to a comparatively small part of the public.'" *Bashor v. Bowman*, 180 S.W. 326, 327 (Tenn. 1915) (quoting *Tenn. Coal, Iron & R. Co. v. Paint Rock Flume & Transp. Co.*, 160 S.W. 522, 524 (Tenn. 1913)).

Based on the foregoing, we conclude that the evidence does not preponderate against the trial court's finding that the disputed land was dedicated and accepted as a public road. Furthermore, once the disputed road became a public road, "it remain[ed] a public road in the absence of proof that the statutory procedures for closing roads have been followed." *Dennis*, 1999 WL 1072559, at *4. Ms. Cox bore the burden of proving by clear and convincing evidence that the City abandoned the disputed land as a public road. *See Hughes v. Barbee*, No. E2012-01330-COA-R3-CV, 2013 WL 1441994, at *8 (Tenn. Ct. App. Apr. 9, 2013). Although the record contains evidence that the City abandoned the portion of Third Street directly across from and in line with the disputed land, we agree with the trial court that Ms. Cox failed to present clear and convincing evidence that the City abandoned the portion of Third Street that is the disputed land. We, therefore, affirm the trial court's decision.[9]

---

[9] At trial, Ms. Cox asserted that the disputed land is private. The trial court found that this argument "necessarily concedes the road was public in the past." Ms. Cox challenges this finding on appeal, but this

IV.    Whether the Plaintiffs are entitled to frivolous appeals damages

The Plaintiffs contend that this appeal is frivolous and request that we award them damages under Tenn. Code Ann. § 27-1-122, which states as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

"A frivolous appeal is one that is devoid of merit or one that has no reasonable chance of succeeding." *Young v. Barrow*, 130 S.W.3d 59, 67 (Tenn. Ct. App. 2003) (citations omitted). The decision of whether damages should be awarded under Tenn. Code Ann. § 27-1-122 rests within the discretion of the reviewing court. *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009).

The Plaintiffs are correct that this statute supports the proposition that "'[s]uccessful litigants should not have to bear the expense and vexation of groundless appeals.'" *Elliott v. Wright*, No. E2024-01003-COA-R3-CV, 2025 WL 2621633, at *6 (Tenn. Ct. App. Sept. 11, 2025) (quoting *Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977)). Their argument, however, fails to consider that the statute "'must be interpreted and applied strictly so as not to discourage legitimate appeals . . . .'" *Id.* (quoting *Davis*, 546 S.W.2d at 586). Having considered these competing considerations, we exercise our discretion to decline to award the Plaintiffs' request for damages under Tenn. Code Ann. § 27-1-122. Ms. Cox's appeal was not successful, but it was not frivolous.

CONCLUSION

The judgment of the trial court is affirmed.  Costs of this appeal are assessed against the appellant, Victoria Cox, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE

---

issue is pretermitted by our determination that the trial court's reliance on the extensive evidence discussed in this opinion supports a finding that the disputed land is a public road.